```
                  UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
                        WESTERN DIVISION


TRACY M. ANANAIS,              )   No. ED CV 09-00982-VBK
                               )
              Plaintiff,       )   MEMORANDUM OPINION
                               )   AND ORDER
      v.                       )
                               )   (Social Security Case)
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security,                      )
                               )
              Defendant.       )
_____ )
```

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.  Whether the Administrative Law Judge ("ALJ") articulated

```
 1                    specific and legitimate reasons for rejecting the opinions
 2                    of the treating physician; and
 3          2.   Whether the ALJ articulated clear and convincing reasons for
 4                    rejecting Plaintiff's testimony.
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THERE IS INSUFFICIENT EVIDENCE IN THE RECORD FROM WHICH TO ASSESS PLAINTIFF'S PHYSICAL RESIDUAL FUNCTIONAL CAPACITY ("RFC")**

Plaintiff's primary treating physician is Amon Attia ("Dr. Attia"). (AR 301.) A letter from Dr. Attia dated June 27, 2007 (Id.) indicates that he is board-certified in internal medicine; however, Plaintiff testified that he is her rheumatologist, and treats her primary condition of fibromyalgia. In a treatment note dated December 11, 2002, however, Plaintiff makes reference to having a primary care physician (AR 228). Plaintiff testified that she was referred by Dr. Attia to another physician, Dr. Peterson, for her primary care between the end of 2003 and late in 2004. (AR 63-64.) There are no treatment or diagnostic records from Dr. Peterson.

On December 12, 2007, Dr. Attia completed a fibromyalgia residual functional capacity questionnaire ("Questionnaire"). (AR 296-300.) He indicated that Plaintiff can walk one city block without rest or severe pain; that she can continuously sit and stand for 15 or 20 minutes; that in an eight-hour workday she can stand or walk less than two hours, and sit for about two hours. She is capable of lifting and

carrying less than ten pounds on an occasional basis, but not able to carry anything in excess of ten pounds. (Id.)

Approximately 18 months earlier, on May 18, 2006, the non-examining State Agency physician, Dr. Do, assessed that Plaintiff can lift and carry 20 pounds occasionally, ten pounds frequently, and stand and/or walk for at least two hours in an eight-hour day, sit for about six hours, and that she has unlimited pushing and/or pulling capacity. (AR 161-168, at 162.)

Dr. Do concurrently completed a Request for Medical Advice. (AR 258-259.) There, Dr. Do noted that Plaintiff has seen an acupuncturist,[1] and has also seen Dr. Attia for her fibromyalgia. Dr. Do concluded that Plaintiff can perform a sedentary level of employment which he indicated is supported by the following reasoning:

> "This is consistent and supported by the objective evidence, SXS [symptoms] of fatigue and joint pain associated with FMS [fibromyalgia], statement provided by the [Plaintiff's] acupuncturists and TP Dr. Attia's medical records, which confirm that [Plaintiff] has fatigue and joint pain. A sedentary level RFC [Residual Functional Capacity] would allow [Plaintiff] to sit for the majority of the day and takes into consideration her joint pain and fatigue issues associated with FMS."

(AR 259.)

The ALJ rejected Dr. Attia's conclusions regarding Plaintiff's RFC as set forth in his Questionnaire responses, and accepted the

---

[1] There are no records of an acupuncturist in the AR.

determination of the State Agency physician. (AR 19-20.) Thus, the ALJ determined that Plaintiff has the RFC to stand and/or walk two hours, sit six hours, and lift and carry 20 pounds occasionally and ten pounds frequently. (AR 17.) In rejecting Dr. Attia's conclusions and accepting those of the State Agency physician, the ALJ stated that the conclusions of Dr. Do "are consistent with the weight of the medical evidence. (Exhibits ["Exs."] 1F/1 - 1F/8.)" [AR 162-292]; AR 20.)

### A. Applicable Law.

The Ninth Circuit has repeatedly reaffirmed the principle that greatest weight is ordinarily given to the opinions of treating physicians versus those physicians who do not treat:

> "We afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

With regard to questionnaire and check-off forms, they are disfavored in the law, especially when they are unsupported by objective findings. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996), citing Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983). See also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

### B. Analysis.

The ALJ's rejection of Dr. Attia's conclusions as to Plaintiff's exertional abilities, as set forth on the Questionnaire, will not be

1  overturned by this Court.  Indeed, it is nothing more than a typical
2  "check-off" form, unsupported by any objective testing.  Although
3  Plaintiff vigorously argues that Dr. Attia's long treatment
4  relationship with Plaintiff, as documented by numerous treatment
5  records for a lengthy period of time, provides ample support for the
6  conclusions Dr. Attia reached in the Questionnaire, the fact is that
7  these treatment records do not reflect that any objective testing was
8  completed at any time.  They are, for the most part, summaries of
9  Plaintiff's subjective complaints, and notations of drugs administered
10 for Plaintiff's fibromyalgia, sleep disturbance, or mental issues.
11 Indeed, the ALJ was entitled to discount Dr. Attia's conclusions based
12 upon Plaintiff's own testimony at the hearing, in particular the
13 following:
14     "Q   What -- did he [Dr. Attia] ask you how long you could set
15          and how long you could stand?
16      A   Yeah, he, yeah.
17      Q   And ... Did the doctor mark down anything on the form
18          different from what you reported?
19      A   No."
20 (AR 65.)
21
22     While Plaintiff correctly argues the general point that a
23 physician may, in part, rely upon subjective reporting of her patient,
24 it would appear that in this case, Plaintiff dictated her own
25 exertional abilities, which Dr. Attia simply accepted and transferred
26 onto the Questionnaire.  That process does not reflect an independent
27 medical opinion.
28     Certain other articulated reasons set forth in the ALJ's decision

do not withstand scrutiny.  For example, the ALJ indicated that Dr. Attia's exertional limitations were identical to those he assessed during a period of time when Plaintiff was engaging in substantial gainful activity. (<u>See</u> AR at 20.)  The record, however, does not support this conclusion, in that Dr. Attia never articulated that the limitations he assessed extended back to this period of time. Further, the ALJ indicated that Dr. Attia's notation of fibromyalgia symptoms such as leg, knee, ankle and foot pain, irritable bowel syndrome, numbness and tingling, breathlessness and panic attacks are not corroborated by the treatment records. (AR 20.)  The Court has reviewed the treatment records, however, and there are notations of such subjective complaints at various times by Plaintiff. (<u>See</u> AR at 171-72, 175, 176, 184, and 293.)

It is of some concern that, despite years of treatment, Dr. Attia never wrote a diagnostic report, or at least, this record is devoid of such documentation.  The only condensation or summary of Dr. Attia's views is contained in the Questionnaire, which has no indication of objective or laboratory testing which would support his conclusions. Indeed, Dr. Attia may have had a valid evidentiary basis to reach his conclusions, but the problem is that if so, it is not explicated in the records.  For these reasons, the Court deems that the ALJ was justified in rejecting Dr. Attia's opinions; however, in that Dr. Attia was and is Plaintiff's long-standing primary care physician for her fibromyalgia condition, it would be appropriate to follow up this matter with Dr. Attia, in an attempt to develop the record to determine whether there is an objective basis to support Dr. Attia's conclusions.

Conversely, there is nothing in the record which would appear to

support the exertional limits placed upon Plaintiff by the State Agency physician. Although the ALJ indicates in her decision that Dr. Do's opinion is supported by the medical evidence, the exhibits that are cited are largely the treatment records of Dr. Attia, and other records, such as a consultative psychiatric evaluation (AR 242-48), which provide no substantiation for Dr. Do's conclusions. Hornbook law provides that Dr. Do's conclusions would be acceptable if they were supported by independent clinical findings, but as Plaintiff correctly points out, there is nothing in the record to so indicate. For that reason, the ALJ was not entitled to rely upon Dr. Do's conclusions with regard to Plaintiff's exertional capacity.

What is left, therefore, is that there is no basis in this record to make any conclusion with regard to Plaintiff's physical RFC. For that reason, the matter must be remanded for a new hearing and development of new evidence.

**II**

**THE ALJ'S REJECTION OF PLAINTIFF'S PAIN TESTIMONY**

**IS NOT BASED ON SPECIFIC, CLEAR AND CONVINCING REASONS**

The record is replete with repeated instances of Plaintiff's subjective pain and fatigue complaints due to her fibromyalgia. Indeed, Dr. Attia's treatment notes consistently reflect such self-reporting by Plaintiff. Plaintiff also has had substantial sleep problems which apparently are only sometimes ameliorated by various medications. (See also, Plaintiff's testimony as AR 53, et seq.) Further, Plaintiff's activities of daily living ("ADL") are limited by her pain and fatigue, both as to quantity and quality.

The ALJ determined that Plaintiff's medically determinable

7

impairment of fibromyalgia could reasonably be expected to produce the alleged pain symptoms, but that her statements concerning intensity, persistence and limiting effects are not entirely credible. (AR 18.) Although the ALJ then set forth numerous reasons supporting this conclusion, the Court does not view them as, overall, specific, legitimate, or convincing. The Court will briefly review the reasons as articulated, so that, on remand, they are not again improperly relied upon to discredit Plaintiff's testimony.

First, the ALJ asserts that Plaintiff's treatment has been "routine and conservative in nature." This conclusion would appear to ignore the fact that there is no apparent known cure for fibromyalgia. As the Ninth Circuit observed in Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004),

> "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood on the basis of patients' reports of pain and other symptoms."

The ALJ later observed that despite Plaintiff's complaints of severe and disabling pain, she has not been regularly treated with a transcutaneous electrical nerve stimulator, physical therapy, biofeedback, or any other treatment or therapy normally associated with a severe pain syndrome. (AR 19.) While in part factually incorrect, in that Plaintiff has participated in physical therapy, the Court finds nothing in the record to substantiate the ALJ's claim that these apparent treatment modalities are either applicable to patients suffering from fibromyalgia, or that they have any success rate. As it appears in the decision, the ALJ is expressing a medical opinion which she is not qualified to make.

1        While the ALJ also relies upon Plaintiff's report that she was
2   treated by Dr. Peterson from October 2003 to 2004 without medication,
3   Plaintiff's testimony was, in fact, that he was "a really horrible
4   doctor," and that he refused to give her medications which she needed.
5   (AR 64.)  In any event, the ALJ's general conclusion that Plaintiff's
6   narcotic pain medication and acupuncture have been "relatively
7   effective in controlling her pain" is a gross overgeneralization.  The
8   treatment records in fact indicate that Plaintiff's pain medications
9   often do not work, that they have to be changed, and that she
10  continues to suffer pain and fatigue.  Indeed, the ALJ conceded this
11  point, while at the same time asserting that pain medication has been
12  effective. ("Treatment records indicate that medication has been
13  changed because they became ineffective and/or caused adverse side
14  effects." [AR 18-19.])  Similarly, the mention of side effects from
15  medications has no relevance, because this was never alleged as a
16  reason for disabling fatigue or pain.  Finally, the ALJ's observation
17  of a lack of musculoskeletal weakness or atrophy is akin to her
18  comments about failure to pursue certain treatment modalities, i.e.,
19  it is a medical opinion which she is not qualified to make.
20       In sum, the credibility assessment does not withstand scrutiny,
21  and on remand, unless there are specific, clear and convincing reasons
22  to reject Plaintiff's subjective pain testimony, it will be credited
23  as true.
24  //
25  //
26  //
27  //
28  //

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: January 7, 2010        /s/
                              VICTOR B. KENTON
                              UNITED STATES MAGISTRATE JUDGE